PATRICK FALCONER AND OTHERS, APPELLANTS, v. THE BUFFALO AND JAMESTOWN RAILROAD COMPANY AND OTHERS, RESPONDENTS.

THE BUFFALO AND JAMESTOWN RAILROAD COMPANY v. WALTER JUDSON, W. BREED AND EDWARD P. JONES, COMMISSIONERS TO ISSUE BONDS FOR THE TOWN OF ELLICOTT, AND ROBERT NEWLAND.

*Town bonding act — Commissioners appointed under — Powers and duties of — Effect of constitutional amendment, article 8, § 11.*

*Town bonds issued in aid of railroad — right of railroad company to compel delivery of — chapter 507 of 1870.*

Commissioners appointed under the town bonding act, to issue bonds in aid of a railroad, are estopped from questioning the validity of the proceedings under which they were appointed. Commissioners so appointed can issue bonds only in accordance with the conditions of the petition asking for their appointment. Having executed such bonds at an earlier period and placed them in the hands of a third party, to be delivered when the proper time arrived, and having entered into an agreement with the railroad company that said bonds should be delivered upon the performance of a certain condition, which condition was afterward complied with by the railroad company, and the constitutional amendment (§ 11, art. 8) having meanwhile gone into effect, *held*, that the bonds thereby became null and void and the commissioners could not deliver them to the railroad company.

The legislature has not, by chapter 507 of 1870, authorized the commissioners to agree with the railroad company to issue the bonds which the tax-payers have consented may be issued to the railroad company; that duty is left to rest solely upon the consent of the tax-payers. That act merely regulates the action of the commissioners and prescribes the purposes to which the railroad company shall apply the bonds or their proceeds.

The consent of a majority, in number and amount, of the tax-payers of a town that the bonds of the town may be issued, in aid of the construction of a railroad within this State, in the way provided for, by what is properly known as the bonding act, gives no right to the railroad company that a court of law or equity will enforce against the town because:

1st. The company is not bound to receive the bonds, or to apply them or their proceeds in the construction of the road.

2d. It cannot compel the persons appointed to issue the bonds, to sign and deliver them for the same reason.

3d. Because they owe no duty, at that stage of the proceedings, to the railroad company.

THE first case came before the General Term, upon appeals from two orders dissolving an injunction and sustaining a demurrer to the plaintiffs' complaint.

The action was brought to prevent the issuing and delivery of $200,000 of the bonds of the town of Ellicott to the Buffalo and Jamestown Railroad Company. The plaintiffs were tax-payers of the town, and the defendants were the railroad company, the commissioners previously appointed to execute and deliver the bonds, and Robert Newland, who had the bonds in his possession, in escrow, or upon a trust, to deliver them to the railroad company upon the performance of certain conditions.

The complaint alleges, among other things, that the plaintiffs are each freeholders, residents and tax-payers of the town of Ellicott. That a petition was presented to the county judge of Chautauqua county, asking for the bonding of the town upon the conditions that the line of the railroad of said company, to be constructed from the city of Buffalo to the line of the State of Pennsylvania, in said county, should be located and constructed through the village of Jamestown, in said town of Ellicott, before said bonds should be delivered to said company, and such proceedings were thereupon had upon such petition, before the county judge of said county of Chautauqua, on or about the 20th day of May, 1872, that he adjudged and determined that said petitioners, signing said petition, represented a majority of the tax-payers, etc. That in the month of June, 1872, an agreement or contract was made between said railroad company and said commissioners of the town of Ellicott, providing, among other things, that " such commissioners aforesaid, for themselves, as such commissioners, and their successors in office and assigns, do agree to and with the said party of the second part, that when the said party of the second part shall have located and constructed through the village of Jamestown, in the said town of Ellicott, the proposed railroad of the said company, running from the city of Buffalo to the Pennsylvania State line, in the said county of Chautauqua, the said party of the first part, as such commissioners, or their successors in office, will thereupon immediately subscribe in the name of the said town of Ellicott to the capital stock of the said " The Buffalo and Jamestown Railroad Company," to the amount of $200,000, and will pay for the said

stock by delivering to the said company the bonds of the said town of Ellicott in the amount of $200,000, which bonds shall be made and executed by the said party of the first part, or their successors in office, in due form of law, and by them duly signed, sealed and certified." * * * "And in consideration of the premises, the said party of the second part, for itself, its successors and assigns, does hereby agree to and with the party of the first part, and their successors in office, that the party of the second part will, in manner and form hereinbefore specified, receive the subscriptions aforesaid, of the said party of the first part, to the said capital stock in the sum of $200,000, and will receive in payment therefor the said bonds of the town of Ellicott to the amount of $200,000, created and issued by the said commissioners, in manner and form aforesaid, in due form of law, and will thereupon issue and deliver to the party of the first part, in due form, the certificates representing the amount of the capital stock so subscribed and paid for as aforesaid.

" The parties of the first part refer to the petition and proceedings under which they were appointed such commissioners, as aforesaid, and do not undertake or agree to perform the conditions of this contract, except as they are empowered and authorized so to do by said petition, and proceedings and the statute in such case made and provided."

That at some time prior to the 28th day of August, 1874, said commissioners did sign bonds of said town of Ellicott for the aggregate amount of $200,000; and did, on the 28th day of August, 1874, put said bonds into the hands of Augustus F. Allen and Robert Newland, the said Allen and Newland, at the same time, signing a paper containing the following, among other provisions, stating that said Allen and Newland held the bonds for the following uses and purposes : " If the said Buffalo and Jamestown Railroad Company shall, on or before the 1st day of January, 1876, have constructed its railroad to and through the village of Jamestown, in said town of Ellicott, upon a right of way and road-bed in which they have the title in fee simple, * * * and upon such commissioners having subscribed $200,000 to the capital stock of said company and received the certificate of said company therefor, to deliver to said company the said $200,000 in bonds of said town in payment of such subscription ; and in case said company shall not construct its said railroad, in manner and form and to

the extent aforesaid, on or before January 1st, 1876, then we are to return said bonds to said commissioners."

That said bonds are now in the hands of said Newland.

The plaintiffs asked that any bonds that may have been signed by such commissioners shall not be sold or delivered to any person or corporation but shall be canceled or destroyed ; and that they shall not execute or deliver any other bonds of said town of Ellicott, as such commissioners aforesaid, and shall not subscribe to the stock of the Buffalo and Jamestown Railroad Company or purchase the same.

The plaintiffs obtained a preliminary injunction prohibiting the issuing and delivery of the bonds. The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action  The court at Special Term sustained the demurrer and dissolved the preliminary injunction, and from such orders the plaintiffs appealed.

The second case came before the General Term upon a case agreed upon by the parties, without action, for submission to the court. The plaintiff seeks to compel the defendants to deliver certain bonds of the town of Ellicott, in the county of Chautauqua, to or for the benefit of the plaintiff corporation, for an equal amount of stock in the same corporation.

A petition of tax-payers of the town was presented to the county judge, in March, 1872, with a condition that the company should build its road through the village of Jamestown, in the town, before the bonds should be delivered. Subsequent proceedings were thereupon had, in accordance with the statutes, and the defendants Weeks, Breed and Jones were appointed commissioners in May, 1872. The commissioners executed the bonds, and in August, 1874, delivered them to the defendant Newland and one Allen, deceased, in escrow, to be delivered to the railroad company if it should finish its road through the village of Jamestown before the 1st of January, 1876. The road was so built and finished in October, 1875, but the commissioners and Newland refused to deliver the bonds, upon the ground that they were prohibited from so doing by section 11, article 8 of the amended Constitution of the State of New York, which took effect 1st January, 1875.

*R. P. Marvin*, for the appellants in first action.

*George F. Comstock*, for the respondents in first action.

*George F. Comstock*, for the plaintiff in second case.

*Porter Sheldon*, for the defendants in second case.

MULLIN, P. J.:

The consent of a majority, in number and amount, of the tax-payers of a town, that the bonds of the town may be issued in aid of the construction of a railroad within this State, in the way provided for by what is popularly known as the bonding act, gives no right to the railroad company that a court of law or equity will enforce against the town, because: 1st. The company is not bound to receive the bonds, or to apply them or their proceeds in the construction of the road. 2d. It cannot compel the persons appointed to issue the bonds, to sign and deliver them for that same reason. 3d. Because they owe no duty at that stage of the proceedings to the railroad company.

Whether the tax-payers could compel the persons appointed to execute and deliver the bonds is a question not before us, and need not be considered.

It was, doubtless, a defect in the bonding act, that it did not provide some way to secure the application of the bonds, or their proceeds, to the construction of the railroad; and to enable it, before the subscription for the stock in the name of the town, to compel the officers of the town to issue the bonds, and that defect led to the adoption of chapter 907 of the Laws of 1869.

That act provided that a majority, in number and amount, of the tax-payers, whose names appeared on the last assessment roll of the town, might apply to the county judge, by petition, setting forth that they desired that the town might issue bonds to the amount named, and invest the same, or their proceeds, in the stock or bonds of a railroad company in this State, named in the petition.

The duties of the county judge upon receipt of the petition are prescribed, and he is required to take proof of the matters alleged in the petition, and, if they are proved to his satisfaction, he is then to adjudge that the facts so alleged are true, and cause such finding to be entered of record.

After this adjudication is made, the county judge is then to appoint commissioners who are to execute bonds in the name of

the town ; and they are to subscribe in the name of the town for stock of such railroad company to the amount named in the petition of the tax-payers, and to pay for the same with the bonds or their proceeds.

By these provisions of the statute, a duty is doubtless, imposed upon the commissioners to subscribe for stock of the railroad company, to issue bonds with which, or their proceeds, to pay for the stock, which the courts may compel them to perform.   But there is no contract between the town or its commissioners and the railroad company that the latter can in any way enforce.

While the proceedings remained in this way, the legislature might repeal the bonding act, without violating the provision of the Constitution of the United States which forbids the States to pass any law impairing the obligation of contracts.

In 1870 the legislature passed an act (chapter 507 of the laws of that year), which declared that it should be competent for any corporation, to aid whose construction bonds shall have been authorized to be issued by any municipal corporation, to enter into an agreement with the commissioners appointed to issue bonds, limiting and defining the times when, and the proportions in which said bonds or their proceeds shall be delivered to said corporations, and the place or places where, and the purposes for which such bonds or their proceeds shall be applied or used, and such agreement shall be valid in all courts and places.   And the commissioners shall not be compelled by any court to deliver such bonds or their proceeds to such railroad company, until such agreement shall be executed if required by them.

It will be seen that the legislature has not, by the act referred to, authorized the commissioners to agree with the railroad company, to issue the bonds which the tax-payers have consented may be issued to the railroad company ; that duty is left to rest solely upon the consent of the tax-payers, so that there has been at no time any contract by which the railroad company became entitled to the bonds.

The contract provided for by the section of the chapter (507) above cited, merely regulates the action of the commissioners and prescribes the purposes to which the railroad company shall apply the bonds or their proceeds.

The duty of the commissioners to issue bonds rests on the statute of 1869, and not upon the agreement authorized to be made by chapter 507.

When the section of the State Constitution took effect that prohibits towns from issuing bonds in aid of railroad companies, the right of the railroad company to enforce the delivery of the bonds was taken away. It rested purely on the act of 1869, and not upon the contract between it and the town or its agent.

The commissioners, therefore, had no power to agree, in and by the contract between them and the railroad company, dated the 14th of June, 1872, that, when the company had located and constructed its road through the village of Jamestown, they would subscribe for stock and issue bonds to pay for the same. The right of the railroad company to these bonds did not, and could not rest on the agreement of the commissioners, but upon the statute of 1869 and the consent of the tax-payers.

When these were swept away by the constitutional provision the rest of the provisions of the agreement of the seventeenth of June became inoperative. There being no bonds that could be issued, they were released from the obligation to issue them.

E. DARWIN SMITH, J.:

The questions presented in these cases depend primarily, upon the construction of the petition of the persons claiming to be a majority of the tax-payers of the town of Ellicott.

In that petition is the following clause: " Your petitioners desire that the said town of Ellicott shall create and issue its bonds to the amount of $200,000, and invest the same, or the proceeds thereof, in the stock of the Buffalo and Jamestown Railroad Company, upon the condition that the line of the said railroad of said company, to be constructed from the city of Buffalo to the line of the State of Pennsylvania, in said county, shall be located and constructed through the village of Jamestown, in said town of Ellicott, before said bonds shall be delivered to said company or sold."

The object which the petitioners intended to secure by this condition, I think, was two-fold: first, to secure the location of said railroad through the village of Jamestown ; and, secondly, to secure

its construction and completion upon such line to and through the said village, before the said bonds were to be issued or sold.

The objection, that it does not appear from the said petition that the Buffalo and Jamestown Railroad Company is a railroad company in this State, I think, is waived by the provisions of the contract hereinafter mentioned, wherein the Buffalo and Jamestown Railroad Company, the party of the second part to said contract, is described as "a railroad corporation created and existing under and by virtue of the laws of this State."

The question upon the form of the petition in *The People ex rel. Rogers v. Spencer* (55 N. Y., 1), was presented upon certiorari, and in the opinion of Judge ANDREWS, who delivered the opinion of the court, it is stated " that the rights of third persons are not in question, and the court could, without injustice to any one, affirm the conclusions they had reached."

Any person acting under and in affirmance of such proceeding as valid, would be estopped, I think, from questioning their validity afterward.

The town of Ellicott, through its commissioners, have, in the contract referred to, clearly recognized the proceedings before and adjudication of the county judge as valid, and are estopped from questioning them for defects in the said petition.

The railroad company was authorized, under the act of the legislature of 1870 (chap. 507), to contract with the railroad commissioners of the town of Ellicott, to fix and define the time and terms upon which they would subscribe to the stock of said company, and issue the bonds of said town in payment therefor; and the said act declares that contracts so made shall be valid. This provision makes valid the contract so made against the commissioners, or the town they represent, so far as such contracts are not in violation of law, or exceed the powers of the commissioners. The commissioners could not contract to subscribe for the stock of said railroad, in violation of the condition of the petition subscribed by the tax-payers and addressed to the county judge, nor could such commissioners, by contract, enlarge their own powers. They could contract provisionally, to issue such bonds and subscribe for such stock, when said railroad should have been located through, and completed to the village of Jamestown.

This would simply define the time and terms for the issue of such bonds. They could not provide for the issue of such bonds at any earlier period, by executing them and delivering them conditionally, in trust or otherwise. The subscription of said stock and the issue of said bonds could not lawfully take place until said railroad was completed to the village of Jamestown. Before said railroad was so completed, the power of the said commissioners, and the power of the said town to subscribe for said stock and to issue said bonds, was entirely taken away by the amendment of the Constitution, which went into effect on the 1st day of January, 1875. These commissioners were public officers, acting under the authority of law, which was thus repealed before any vested right had accrued under it binding upon said town of Ellicott. The execution and delivery of said bonds to Augustus Allen and Robert Newland in trust for said parties, as stated in complaint and case, could not in any degree affect the question nor change the rights of the town. These bonds in the hands of the said trustees cannot lawfully be delivered to the said railroad company, and are absolutely null and void in the hands of the said trustees.

It follows, therefore, from these views, that the order dissolving the injunction in the suit of Falconer against said commissioners and other defendants, was improperly dissolved, and the demurrer in said action erroneously sustained, and should be reversed and said injunction restored. The cause of action in said suit was clearly maintainable, upon the merits, within the case of *Ayers v. Lawrence* (59 N. Y., 192), and in the case of *The Buffalo and Jamestown Railroad Company. v. Walter J. Weeks and others.* Judgment should be given for defendants, according to the prayer of said defendants in the said submitted case, with costs.

MULLIN, J., concurred.

GILBERT, J. (dissenting): *

The commissioners were authorized to subscribe in behalf of the town of Ellicott, for $200,000 of the stock of the railroad company, and to pay for the same by issuing the bonds of said town, when-

---

* In confirmation of the views expressed in the dissenting opinion in this case, see *Moultrie* v. *Rockingham Ten Cent Savings Bank* (Albany Law Journal, vol. 13, p. 369). — [REP.

ever that company should have performed the condition upon which the authority to make such subscription was granted, namely : " That the line of the railroad should be located and constructed through the village of Jamestown in said town of Ellicott." (Laws 1869, chap. 907; Laws 1871, chap. 925.) The commissioners made no formal subscription to the stock of the railroad company, but on the 14th of June, 1872, a written contract was entered into between the commissioners and the company, whereby the commissioners agreed that when the railroad company should have performed the conditions aforesaid, they as such commissioners or their successors in office, would thereupon immediately subscribe in the name of the said town of Ellicott to the capital stock of said company to the amount of $200,000, and pay for the same by delivering the bonds of said town in the same amount; and the railroad company agreed to receive said subscription and to receive said bonds in payment thereof. The company did not perform the condition aforesaid until October, 1875. Meantime and on the 1st of January, 1875, the amendment to article 8 of the Constitution of this State, prohibiting any town from becoming directly or indirectly the owner of stock in any association or corporation, went into operation. (Const., art. 8, § 11.) The said railroad company seeks a performance of the contract of June 14th, 1872, but the commissioners insist that their power to perform it has been taken away by this amendment of the Constitution.

By section 5 of the act of 1869 (chap. 907), the commissioners were not only expressly empowered, but directed to subscribe for the stock and to exchange the bonds of the town therefor at par upon the condition stated.

By chapter 507 of the Laws of 1870, the railroad company was empowered to enter into any agreement with the commissioners appointed to issue said bonds, limiting and defining the times when and the proportions in which said bonds or their proceeds should be applied or used; and the act declared that any such agreement, in writing, duly executed by such corporation and a majority of said commissioners, should in all courts and places be valid and effectual. It is urged on behalf of the commissioners, that said act did not confer upon them power to enter into the agreement, because the act limited their authority to issue bonds to

a company, in aid of whose railroad, bonds had been authorized to be issued, and that the plaintiff was not such a company, for the reason that, at the date of the agreement, the condition on which the authority to issue the bonds depended had not been performed. Putting this objection in plain English, it is that a conditional authority is no authority. I think such a construction is obviously erroneous. The language of the statute of 1870 justifies no discrimination between an authority granted upon condition, or an unconditional one. All that it requires is that the railroad company shall be one in aid of the construction of whose railroad proceedings had been taken, which authorized bonds to be issued at any time. Before the act of 1870 referred to was passed, the only authority on this subject was contained in the aforesaid act of 1869, which authorized the commissioners to subscribe for the stock and issue the bonds simultaneously. That statute did not, in terms, authorize a condition to be imposed upon the power or duty of the commissioners to issue the bonds; but, in 1871, the legislature amended the act of 1869 by providing that the petition of the taxpayers, which is the foundation of the authority to issue the bonds, might be absolute or conditional, and binding the railroad company, in case of its acceptance of a subscription founded upon a conditional petition, to the observance of the conditions therein specified. (Laws of 1871, chap. 925, § 1.) I can find no limitation of the authority of the commissioners, whereby they are required to withhold the issuing of the bonds until after the condition shall have been performed, and none has been pointed out. The only effect of making the petition conditional appears to be to impose a liability on the railroad company, in case of an acceptance of the subscription. The authority of the commissioners, to make the subscription and to issue the bonds, remains as it existed under the act of 1869, qualified only by the power of making the agreement respecting the issue of the bonds conferred by the act of 1870. In other words, taking the statutes together, the meaning of them is that the commissioners may withhold a sale or delivery to the railroad company of the bonds, until the condition specified in the petition shall have been performed, or an agreement shall have been made which is compatible with the terms of the condition. It is evident that the

legislature did not intend, by the act of 1871, to take away the power of the commissioners, in case of a conditional petition, to make the agreement, because by the same act they amended the act of 1870 without making any change of the language whereby the power to make the agreement was conferred.

The authority to deliver the bonds being dependent upon the subscription for the stock, a power to make an agreement to deliver the bonds necessarily implies a power to agree to make the subscription at the same time the bonds are delivered. What is implied in a statute is as much a part of it, as what is expressed:

Nor do I perceive any difference in legal effect between a subscription to the stock of a corporation conditional in its terms, and a present agreement to subscribe upon the performance of the same condition. In each case the contract is executory in its nature, and the party making it is not bound to take the stock, unless the condition is performed. That being so, I think the commissioners had authority either to wait until the condition had been . performed, before making the subscription, or to make a present agreement to subscribe upon the performance of the condition.

The only remaining questions arise upon the effect of the amendment of the Constitution before referred to. A construction cannot be given to this provision which would make it operate retroactively, so as to destroy or impair antecedent rights and interests which had become vested. That proposition is too well settled to need discussion.

I think, also, that the language of the amendment admits of a construction, which would limit it to transactions occurring after its adoption, and exclude such previous acts as were authorized by existing laws. Such is the most natural and honest construction, and we are inclined to think it should be applied in a case like this. The question, however, must be decided, namely, whether the obligations assumed by or imposed upon the commissioners were subject to abrogation by legislative act or by constitutional amendment. Upon this subject it is contended: 1. That the railroad company acquired no right to the bonds, and the commissioners no right to subscribe for the stock, until after the amendment of the Constitution took effect. And, 2. That the power reserved by the legislature to alter or repeal the acts incorporating the town

and the railroad company, includes the power to abrogate con-
tracts made between them.   The answer to the first ground has
been already intimated, namely, that the statute itself created the
right and imposed the duty of subscribing for the stock, and of
issuing the bonds upon the performance of the conditions imposed
by the petition of the tax-payers, and that by the agreement the
assent of the town, through its agents the commissioners, to the
fulfillment of that obligation and duty, and of the railroad com-
pany to the performance of the condition, were manifested.   A
perfect contract was thus formed on the part of the town to
deliver the bonds in payment for the stock, on performance of
the condition, and on the part of the railroad company to receive
such subscription on those terms, and issue the stock to the town.
Unless, therefore, the amendment of the Constitution referred to
was an exercise of the power reserved to alter and repeal charters,
the inviolability of that contract is secured by the provision of
the Constitution of the United States, that "no State shall pass
any law impairing the obligation of contracts."   (Art. 1, § 10.)   No
doubt the power reserved may be exercised by the people, notwith-
standing it has been reserved to the legislature.   (Re Oliver Lee's
Bank, 21 N. Y., 9.)   That the amendment was not an exercise
of that power, however, I think, is clear.   The contract formed
no part of the charter of either the town or the railroad company.
It was outside of and collateral to both.   The charters are con-
tracts with the State, and the reserved power alluded to is limited
to those contracts, and does not embrace contracts authorized by
laws, in force at the time of the making thereof, made by corpora-
tions with each other or with third persons.   A repeal of a charter
would not discharge debts or obligations due to the corporation.
They would form part of the assets of the defunct body, and would
be administered for the benefit of the creditors (if any) and stock-
holders of the corporation at the time of its dissolution.   How
then can such repeal discharge debts or obligations due from the
corporation?   A dissolved corporation, it is true, cannot be sued,
for the same reason that a dead man cannot.   But its debts and
obligations are not extinguished.   Payment thereof will be enforced
out of its assets, or by means of the personal liability of its mem-
bers or officers, if the charter created such liability.   An announce-

ment of the doctrine that the repeal of the charter of a bank at once annuls its obligations to other banks, would create no little alarm as well as surprise. I am satisfied that such an interpretation of the language of the reserved power under consideration would not be correct. While the State may alter or resume its own grant of corporate powers and franchises, it cannot impair the obligation of a contract between the corporation and a third party, whether the latter be an individual or a corporation. (*Fletcher* v. *Peck*, 6 Cranch, 133; *Green* v. *Biddle*, 8 Wheat., 1; *Aspinwall et al.* v. *Comrs. of Daviess*, 22 How., 364; Cooley Const. Lim., 290.) In the case in 22 Howard, it was made the duty of county commissioners, by statute, to subscribe for the stock of a railroad company, if the majority of the qualified voters at an election determined in favor of the subscription. The election took place in March, 1849. In November, 1851, a new State Constitution took effect containing the prohibition that: "No county shall subscribe for stock in any incorporated company, unless the same be paid for at the time of such subscription." The commissioners made the subscription and issued bonds for it after the last mentioned date. It was insisted that the subscription became complete when, at the election, a majority of the votes was cast in its favor, and did not require the form of a subscription on the books of the company. The Supreme Court of the United States held otherwise, but also held that if there had been a subscription, obligatory upon the parties, the contract thus created would have been protected by the Constitution of the United States, as it would then have been complete before the constitutional prohibition. In that case the power remained wholly unexercised, until after the new Constitution took effect, and for their failure to perform the duty enjoined upon them the commissioners might be personally liable, although no liability attached to the county. In the case before us there was an authorized agreement to execute the power. I think that fact makes a well defined and just distinction between the two cases. It has been said that the amendment of the Constitution operated as a revocation of the authority vested in the commissioners. But that merely begs the question. While it is true as a general proposition, that a derivative authority does not survive the original authority, yet that principle could not be applied in a case like this without

producing manifest injustice. Here the railroad company have made large expenditures in constructing their road, in reliance upon the powers of the commissioners under a valid agreement made with them, while such powers were in full force. They thus acquired an interest in the execution of the power, which a revocation of it would not divest. The power became one coupled with an interest, which is not revocable at the will of the grantor. (Bell Com. [5th ed.], 488, 490; Story Ag., § 477; *Hunt* v. *Rousmanier, Admr.*, 8 Wheat., 174.) In the last case cited, Ch. J. MARSHALL remarked, "We know that a power to sell for the benefit of B., engrafted on an estate conveyed to A., may be exercised at any time, and is not affected by the death of the person who created it. It is then a power coupled with an interest, although the person to whom it is given has no interest in its exercise." (See, also, *Franklin* v. *Osgood*, 14 J. R., 553; *Jackson* v. *Ferris*, 15 id., 346.)

I am of opinion, for the reasons stated, that, in this case, the agreement to subscribe was in judgment of law equivalent to an actual subscription, and that thereby the contract which the commissioners were authorized to make became complete before the amendment of the Constitution took effect. My conclusion, therefore, is that the railroad company is entitled to a delivery of the bonds on tendering the stock, notwithstanding the condition on which such right accrued was not performed until after the constitutional amendment took effect, and that it is the duty of the defendant Newland to deliver the bonds to the railroad company upon the receipt of the certificates for an equal amount of stock; no further subscription to the stock is necessary. And I am of opinion that, as the formal act of subscribing on the book of the company may possibly be now prohibited, it is not the duty of the commissioners to make any further subscription.

Judgment in *Buffalo and Jamestown Railroad Co.* v. *Weeks* should be entered in favor of the railroad company accordingly.

The orders appealed from in *Falconer and others* v. *Buffalo and Jamestown Railroad Company* should be affirmed, with ten dollars costs and disbursements.

Present — MULLIN, P. J., SMITH and GILBERT, JJ.

Judgment in *Falconer* v. *Buffalo and Jamestown Railroad Co.* as follows: Order sustaining demurrer to complaint reversed, and order dissolving injunction reversed, with ten dollars cost of appeal and disbursements.

Judgment in the *Buffalo and Jamestown Railroad Co.* v. *Weeks and others* as follows: Judgment for the defendants, declaring that they are not authorized in law to make any subscription to the stock of the plaintiff's company for the town of Ellicott, or to deliver or issue any bonds of said town of Ellicott to the plaintiffs, and that the plaintiffs pay their costs in this action.