(27 App. Div. 180.)

HIRSHFELD v. BOPP et al.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

1. ASSIGNMENT OF CLAIM—ACTION BY ASSIGNOR.
   A cause of action, whether individual or representative, which a plaintiff has the right to enforce when he brings his suit, he may continue to enforce, under Code Civ. Proc. § 756, even after he has transferred his claim, until his transferee has been substituted in the action.

2. RELEASE OF CLAIM—RIGHT OF ACTION.
   A creditor who brings an action on behalf of himself and other creditors cannot release to the defendant anything more than his individual claim, and therefore the fact that he executes a release does not affect the continuance of his capacity to continue the suit as to the other creditors, and on their behalf.

3. INSOLVENT BANK—LIABILITY OF STOCKHOLDERS.
   Section 52 of the banking law, imposing individual liability for debts of a bank upon the stockholders, is applicable to corporations theretofore organized, as well as to those thereafter to be formed.

4. SAME—CONSTITUTIONAL LAW.
   While section 52 created, in respect to certain classes of banks, a liability which did not exist before, yet it is not unconstitutional, being warranted, as to banks organized since 1846, by Const. 1846 and Const. 1894, art. 8, § 1, permitting the alteration of general and special acts of incorporation.

5. SAME—"MONEYED CORPORATIONS."
   Banking associations organized under Laws 1838, c. 260, are "moneyed corporations," and are therefore embraced by the "Banking Act."

6. DISSOLUTION OF CORPORATION—ACTION AGAINST STOCKHOLDERS.
   Where the final judgment of dissolution of a corporation, as well as the usual order preceding and leading up to it, contains an injunction restraining all persons from bringing actions or taking any proceedings against the corporation, the necessity of issuing execution against it, and having it returned unsatisfied before bringing an action against the stockholders to enforce their individual liability, is thereby obviated.

Appeal from special term, New York county.

Action by Jacob Hirshfeld, suing on his own behalf and on behalf of such others as might join, against John Bopp and others. From the judgment, plaintiff and certain defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Moses Weinman, for plaintiff appellant.
Guggenheimer, Untermyer & Marshall, for defendants appellants.
Stickney, Spencer & Ordway, for defendants respondents.

BARRETT, J. It does not seem necessary for the disposition of this appeal to consider what are ordinarily the rights of a creditor plaintiff to discontinue a representative action before his fellow creditors have, by judgment or otherwise, obtained an interest therein. There are special circumstances here which render the general rule of no importance. Hirshfeld's agreement with the receivers bound him not to discontinue to the prejudice of the other creditors; and we so held in the Clirehugh Case, 5 App. Div. 202, 39 N. Y. Supp. 24. But, in truth, Hirshfeld never sought to discontinue. He assigned his claim, but did not refuse to proceed with the suit. The real question is whether he has legal capacity to go on with it. That question, too, should be regarded as settled by the Clirehugh decision. If Hirshfeld had no standing in court, the application to remove him would not have been denied. It would have been unwarrantable to insist upon his remaining the plaintiff when he had no capacity to sue. In truth, Hirshfeld's capacity to continue the action has hardly been challenged, but merely his right so to do as against Clirehugh. That he still possesses this capacity cannot be doubted. Section 756 of the Code of Civil Procedure explicitly provides that, "in case of a transfer of interest, the action may be continued by the original party, unless the court directs the person to whom the interest is transferred to be substituted in the action," etc. Thus Hirshfeld's capacity to prosecute Clirehugh's individual claim, before substitution, is plain. Equally plain is his capacity to continue the representative action. He, as one of the creditors, had the right to bring the action, and, by the force of the section, he had capacity to continue it. Any cause of action, individual or representative, which Hirshfeld had the right to enforce when he brought his suit, he may continue to enforce until a substitution, in spite of the transfer of his claim. Clirehugh's releases to certain of the defendants do not affect the question. He could release only the individual claim originally owned by Hirshfeld. Neither he nor Hirshfeld could release the claims of the other creditors. As to them and on their behalf, Hirshfeld retained the capacity to continue the suit, notwithstanding the transfer to Clirehugh of his individual claims. The action was brought to enforce the general liability of stockholders to all the creditors of the bank, and that liability may still be properly enforced by Hirshfeld, as plaintiff, on their behalf and for their benefit.

This disposes of the ground upon which the case was decided. There are, however, a number of purely legal questions presented by the defendants, any one of which, if well taken, would necessitate an affirmance. They must be considered.

It is contended that the liability specified in the banking law was meant to be imposed only upon such corporations as should be thereafter organized. The wording of the act refutes any such claim. Section 1 provides that it "shall be applicable to all corporations and individuals specified in the next section"; and section 2 provides that "the term 'bank,' when used in this chapter, means any moneyed corporation authorized by law to issue bills, notes or other evidence of debt, or to receive deposits of money and commercial paper," etc.

The term "corporation authorized by law" plainly includes one already organized, as well as one that should be formed thereafter. More comprehensive words could hardly have been used. It is also most improbable that the legislature, in framing a general banking system, intended to make such a distinction as is contended for, which would lead to inequality and injustice for years to come. Such an intention is not to be inferred. In re Oliver Lee & Co.'s Bank, 21 N. Y. 9.

But it is said that the act, as applied to existing corporations, is unconstitutional, as impairing the obligation of a contract, at least as to those who became stockholders prior to the passage of the banking law. This point was referred to by the court of appeals in the decision of the demurrer to the original complaint (Hirshfeld v. Bopp, 145 N. Y. 84, 97, 98, 39 N. E. 817), where it was said that the liability imposed was not a new one, but a mere continuation of that contained in the acts of 1849 and 1882 (chapter 226, Laws 1849; chapter 409, Laws 1882). This point was not actually decided by the court, and we venture to suggest that, while the dictum in favor of the constitutionality of the act was undoubtedly correct, different reasons for that conclusion would have been given had the question been squarely presented. In the prior acts referred to, personal liability was imposed only upon stockholders in banks issuing bank notes or any kind of paper credits to circulate as money. The banking law, on the other hand (section 52), imposes the liability upon the stockholders in "every" corporation to which the act applies; that is, to every corporation transacting a banking business, of whatever nature. Hence it must be conceded that the banking law created a liability which never existed before; and, until its passage, the defendant stockholders would not have been liable, as the Madison Square Bank was not a bank of issue.

The learned counsel for the plaintiff concede this, but contend that the act is constitutional, because of a reservation by the legislature of the right to amend the charter of the bank. It was incorporated under chapter 260 of the Laws of 1838, section 32 of which reserved the right to alter or repeal the act. Unquestionably, this section gave the right to thereafter increase the liability of shareholders. In re Oliver Lee & Co.'s Bank, supra; s. c., sub nom. Sherman v. Smith, 1 Black, 587; In re Reciprocity Bank, 22 N. Y. 9. But the whole of this act was repealed in 1882 (chapter 402, Laws 1882). There was also for many years on the statute books of the state a provision making "the charter of every corporation * * * subject to alteration, suspension, and repeal in the discretion of the legislature." 1 Rev. St. c. 18, tit. 3, § 8. But this provision was repealed in 1890 by the original general corporation law (Laws 1890, c. 563). The constitution of 1846, however, provided (article 8, § 1):

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes," etc. "All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed."

This provision was incorporated into the constitution of 1894 without change. It was first passed eight years after the act of 1838,

and its effect upon corporations previously formed may be doubted. It is plain, however, that, after its passage, it modified the act of 1838 to the same extent as though it were included in it, and that thereafter any corporation organized under the latter act took its charter subject to the legislature's right to alter or repeal it. The Madison Square Bank was not organized until 1882, and is hence subject to this right.

It is further contended that the banking law was not meant to embrace banking associations created under the act of 1838. It affects (section 2) "any moneyed corporation" authorized to carry on a banking business. That these banking associations are "moneyed corporations" has long been settled. Robinson v. Bank of Attica, 21 N. Y. 407. In that case it was said:

"That they are moneyed corporations is as well settled as that they are corporations at all. Indeed, if they are corporations, there can be no escape from the conclusion that they are moneyed corporations." Page 409.

It is argued that the legislature, in passing the act of 1838, inaugurated a new banking system; that the associations formed under it differ in their structure from the ordinary bank; and that there should be a specific reference in statutes to "banking associations" in order to affect them. No such consideration would justify us in disregarding the plain wording of the act. These associations are moneyed corporations; and the legislature evidently had no intention of excluding them from the purview of the act. On the contrary, the law was plainly meant to apply to and govern all corporations or individuals engaged in the banking business.

The necessity of issuing execution against the bank, and having it returned unsatisfied, was obviated by the injunction clause in the preliminary restraining order and the final judgment of dissolution. Hunting v. Blun, 143 N. Y. 511, 38 N. E. 716. As was said by Chief Judge Andrews in the decision upon the demurrer, this case "puts at rest the question on that head." 145 N. Y. 96, 39 N. E. 820. The case of Glass Co. v. Vary, 152 N. Y. 121, 46 N. E. 312, does not disturb the doctrine laid down in Hunting v. Blun. The decision was placed expressly upon the ground that the restraining order was "preliminary and precautionary," and that there was nothing to show that the creditor could not have obtained a modification of it. The injunction here is contained in the final judgment or dissolution, and also in the usual order preceding and leading up to it. It is perfectly obvious that no creditor could have obtained a modification of either. Such a modification would have prevented the "fair and just distribution of the property of the corporation," for which the judgment "must provide." Code, § 1793. The defendants are not contending for a substantial right. The machinery already in operation insures them against being held for money which might have been obtained from the corporation. Their point is strictly technical, and it is not well taken.

None of the other points raised require special consideration. In its main aspects, the liability of the defendants may be considered as settled upon grounds which cannot be altered upon a new trial; but

each defendant has the right to prove that he is not a stockholder, within the meaning of the act. Some of them have already done so, and others may be able to do so upon a new trial. That right should not be taken from them, and there should consequently be a reversal and new trial as to all the defendants except Baum and Livermore. All concur.