## Lehigh Iron Co. *versus* Lower Macungie Township.

1. An Act of February 25th 1870, authorized a township to collect a tax from owners of ore beds for "every ton of ore mined and carried away with teams" over the roads in the township. *Held*, that the act was not repealed by sect. 1, art. 9, of the Constitution of 1873, declaring that "all taxes shall be uniform on the same class of subjects," and levied, &c., under "general laws."

3. Sect. 1, art. 9, of the New Constitution is not immediately operative; it is mandatory on the legislature to enact laws framed upon its special intent and to repeal all laws inconsistent with it.

3. It is left to the legislature to time the repeal of special and local laws after proper general laws have been passed.

4. Article 9, of the New Constitution, construed.

5. Weber *v.* Reinhard, 23 P. F. Smith 370, re-affirmed.

March 23d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1876, No. 149.

This was an action of assumpsit, brought April 7th 1875, by Lower Macungie Township against the Lehigh Iron Co.

The cause of action as set out in the affidavit of claim was:—

"That defendant is a corporation created under the laws of Pennsylvania and has its principal works in said county, and there carries on business; that said defendant on February 25th 1874, was and ever since has been the lessee and grantee of iron ore mines in said township of Lower Macungie, from which said mines said defendant as lessee or grantee, as aforesaid, did cart and carry away or cause or procure to be carried away over the public roads in said township, the following quantities of iron ore, to wit : * * *; that at the rate specified in the act thereto annexed, relating to said township of Lower Macungie, the tax on the said ore so carried away amounts at the expiration of said first period of six months to $86.15, and for the latter period of six months to $41.87.

"That after said taxes became due as aforesaid, and before the bringing of this suit, said defendant was notified of the amount of aforesaid, two sums and payment thereof demanded; that said defendant * * * is indebted to the plaintiffs in said two sums—together $128.02, all of which is due and unpaid, for the recovery whereof this suit is brought."

The following are acts under which the tax was claimed : April 14th 1868, Pamph. L. 1127 :

"An act authorizing the supervisors of Upper Saucon township, Lehigh county, to collect an additional road tax on ore beds.

"That in addition to the taxes collectible under existing laws, the owners of ore beds, situated in Upper Saucon township, Lehigh county, shall, from and after the passage of this act, pay to the

[Lehigh Iron Co. *v.* Lower Macungie Township.]

supervisors of the roads in said township, one and a half cent for each and every ton of ore mined and carried away with teams over the public roads in said township, which said payments shall be made at the end of every six months after the passage of this act; and in default of payment, the same to be collected as debts of like amount are collectible by law."

Act of February 25th 1870, Pamph. L. 241:

" An Act to extend to the township of Lower Macungie, in the county of Lehigh, the provisions of an act approved April 14th, A. D. 1868, entitled ' An Act authorizing the supervisors of Upper Saucon township, Lehigh county, to collect an additional road tax on ore beds.' "

" That the provisions of an act, approved the 14th day of April, A. D. 1868, entitled, &c., be and the same are hereby extended to the township of Lower Macungie in said county of Lehigh; provided that in all cases where the ore is mined under a lease or grant of the ore, such lessee or grantee shall be taken and held to be the party liable to pay the tax provided for by this act; provided said tax shall not exceed one per cent. per ton."

The affidavit of defence was:—

" It is admitted that the Acts of 14th April 1868, and 25th February 1870 (copies of which are appended to the plaintiffs' affidavit), were passed by the legislature, and that the defendant, in the month of February, A. D. 1874, and from time to time since that date, has caused and procured its officers and employees to cart and carry over the highways in the township of Lower Macungie, ores mined on properties owned or leased by said defendants; and that the number of tons set forth in the statement of the plaintiffs is correct. Deponent further saith that the Acts of Assembly referred to have been abrogated and annulled by the provisions of the Constitution adopted in 1873, and consequently this suit cannot be maintained. And deponent saith that there is no authority in law for the imposition and collection of the several sums of money set forth in the plaintiffs' statement; and that the defendant is not indebted to the plaintiffs in any sum whatever."

On a rule for judgment for want of a sufficient affidavit of defence, the court, Longaker, P. J., delivered the following opinion:—

" The special act under which this tax is demanded was held to be constitutional in Weber *v.* The Supervisors of Upper Saucon, 23 P. F. Smith 371. It is however contended by the defendant that by reason of the adoption of the Constitution of 1873, all local and special laws have been repealed. This declaration is not based upon an explicit provision, but is said to follow by implication; and art. 9, § 1, wherein it is provided that all taxes " shall be levied and collected under general laws," is laid hold of as authority to prevent the collection of this tax from the defendant. This tax,

[Lehigh Iron Co. *v.* Lower Macungie Township.]

and the mode prescribed for its collection, exists only by a local law, and if the Constitution operates as a repeal of the statute, then the defence assumed by the defendant will defeat a recovery. A repeal by implication seems to be incompatible with the express language of the Constitution itself. In art. 3, § 7, it is said : ' but laws repealing special or local acts may be passed.' The Constitution prohibits the enactment of local or special laws, but this prohibition most assuredly cannot be construed to operate as a repeal.

" Again, if the provision that all taxes ' shall be levied and collected under general laws' is to be construed to repeal all special laws now in force as regards the collection of taxes, it is to be feared that many counties and other municipalities will find that there is no statute by which their taxes can be levied and collected ; because for many districts special laws have been enacted ; and none have yet discovered that the new Constitution has effected a change. The Supreme Court, by affirmance of the case of the City of Pittsburg *v.* Kitty Roup, Weekly Cases 524, declares, that the special act as regards the assessment of rural property is still in force. I am therefore of the opinion that the affidavit of defence is insufficient, and now, January 17th, A. D. 1876, it is considered, adjudged and decreed that the rule be made absolute, and that the prothonotary assess the amount of damages."

Damages were assessed at $128.02.

The defendants took a writ of error, and assigned for error the entering of judgment for the plaintiffs.

*H. C. Hunsberger* and *E. Harvey*, for plaintiffs in error.

*E. Albright*, for defendant in error.

Chief Justice AGNEW delivered the opinion of the court March 30th 1876.

When the question upon the constitutional power to levy such a special tax as this was here before, this court affirmed it with a very positive dissent, however, by the present Chief Justice, and a qualified concurrence on part of READ, then Chief Justice, and WILLIAMS, J., excepting to the extension of Hammett *v.* Philadelphia, beyond the case itself. It was believed by the majority that the former decisions of the court supported the power, though its exercise was apparently unjust and unequal. For the same reasons the court, as now constituted, feel bound by that decision, especially in view of the constitutional restrictions upon the power of taxation, which it is hoped will hereafter prevent local and unequal impositions. The only question now before us is, therefore, upon the effect of the first section of the ninth article of the new Constitution upon such legislation. It is contended that this section is a repeal

[Lehigh Iron Co. *v.* Lower Macungie Township.]

*per se* of the act under which this tax is sought to be levied and collected.

It is a question of very great concern to the whole state, for if the position taken by the plaintiff in error be true, some of the most important laws of the state have fallen long since, and all acts done under them have been unlawful and void. An example may be found in the act known as the Venango County Tax Law, enacted many years ago, and extended from time to time to other counties, until now it is the law of probably one-third of the counties in the state. This is the law which makes the treasurer of the county the collector of the state and county taxes, sends him out into the different townships to receive from the people, and requires him to place all uncollected taxes, on the first day of September, in the hands of the several constables for collection, with an addition of five per cent. to the taxes of such person to pay the expense of collection. It allows the taxpayer a reduction of five per cent. for prompt payment before the first of August, and grace by payment of the simple amount between the 1st of August and the 1st of September. The constables give bond and sureties for collection. This is undoubtedly the cheapest and best system of collection in the state, but it is unquestionably special. Many other laws for particular localities might be mentioned.

In view of the wide and extended effects of an immediate repeal, *ipso facto*, by the adoption of the new Constitution, it behooves us to be careful in the interpretation of the sections mentioned. Upon all the consideration we can give to this subject, after a very careful argument to assist us, we are of opinion that section 1 of article 9 is not immediately operative, but was intended by the convention to be mandatory upon the legislature to enact laws framed upon its special intent, and to repeal all laws inconsistent therewith, leaving the legislature, in the exercise of a sound and wise discretion, to time the repeal after proper general laws shall have been passed. Any other interpretation would lead to most ruinous results. So much may be deduced from a comprehensive view of the section itself and its consequences, in the absence of any language in it to evidence an intent to make it a repeal *per se*. But beyond this there is strong evidence in the immediate context that the convention had a different intention. A part of section one is the declaration, by way of exception to its generality, of the power of the assembly to exempt certain classes of property from taxation. This is followed immediately by section 2, which provides that "all laws exempting property from taxation other than the property above enumerated, shall be void." Thus the subject of repeal was directly before the mind of the convention, and was limited to laws relating to exemption only. The subject of the second section, being directly connected with the subject of the first, indeed might have been incorporated with it, and this subject being that of *repeal,*

[Lehigh Iron Co. *v.* Lower Macungie Township.]

it is conclusive evidence to our minds that the convention did not intend to repeal special tax laws, but to let them stand until the legislature had enacted a proper general system of taxation to take their places. The eminent men who composed that body could not fail to perceive the utter confusion into which the state would have been thrown by a repeal *per se.*

These views derive confirmation from other portions of the instrument. The exception in the 7th section of the third article, relative to legislation, giving power to *repeal special and local acts,* strongly indicates the intent that such local and special acts should remain until legislation had been adopted to harmonize these local and special provisions with the general laws so adopted. There are, also, instances of immediate repeal of existing laws; for example, art. 3, sect. 21, relating to damages for personal injuries, and sect. 22, relating to investments by executors, &c. Art. 16, sect. 1, relating to certain existing charters of incorporation, and the section relating to exemption laws, already alluded to (sect. 2, art. 9.) Then we have the 2d and 31st sections of the schedule bearing directly upon the question. The former continues in force all laws not inconsistent with the Constitution, and all rights, actions, prosecutions and contracts. This express provision must have its due operation, unless inconsistency plainly appears. The other makes it the duty of the legislature at its first session, or *as soon as may be,* to pass such laws as may be necessary to carry the Constitution *into full force and effect.* This section also necessarily appeals to the consciences of the members, by their oath of office, to perform this necessary duty, and to bring the laws of the state into perfect accord with the Constitution, which is the highest evidence of the will of the people. With the legislature, therefore, this duty remains to provide general laws for uniform taxation, and to harmonize all parts of the state by repealing local and special provisions that stand out upon the body politic as incongruous excrescences.

                                        Judgment affirmed.