## No. 7964.

### CITY OF NEW ORLEANS VS. POYDRAS ORPHAN ASYLUM.

The laws, in existence at the time of the adoption of the Constitution of 1868, and by which *all* the property of the Poydras Orphan Asylum were exempted from municipal taxation, without discrimination, were not repealed or affected by article 118 of the same Constitution, which provided that "the General Assembly shall have power to exempt from taxation property *actually used* for church, school or charitable purposes."

Nor did any subsequent legislation repeal, amend or affect the said laws.

*All* the property of the Poydras Orphan Asylum is, therefore, still exempt from municipal taxation, whether yielding an income, or simply used for the purposes of an asylum.

Rules for the interpretation of Constitutions and Statutes.

APPEAL from the Fifth District Court for the parish of Orleans. *Rogers*, J.

*Sam'l P. Blanc* and *J. Ward Gurley, Jr.*, for Plaintiff and Appellee.

*H. N. Ogden* and *W. F. Ogden*, for Defendant and Appellant:

First—A subsequent law, which is general, does not operate the repeal of a special law upon the same subject without expressions declaring an intention to repeal, or "unless there be such repugnancy between them that they cannot both be complied with under any circumstances." C. C. 17, 23, 1946; De Armas, 10 M. 172; Sedgwick, p. 123; Blain vs. Baily, 25 Ind. 165; State vs. Newark, 2 Dutch (N. Y.) 519; Sedgwick, 2d Ed. 97; 12 M. 697; 1 N. S. 161; 2 N. S. 33; 3 N. S. 190; 5 N. S. 527, 575; 6 L. 135; 7 L. 166; 4 R. 71; 1 An. 54; 2 An. 919; 8 An. 398; 5 An. 121; 6 An. 605; 12 An. 498, 805.

Second—"Every reasonable doubt as to the intention of the law-maker is resolved against rather than in favor of the retroactive operation of the Statute. Its retrospective features must be the necessary result of a strict construction of its expressions." Wade 35, 58; Barb. 161; Pa. 357, 81; 4 Peters 401; 9 W. Va. 162; 23 M. 203; 41 Md. 453; 21 Wis. 268; 15 · Wis. 548; 21 Conn. 351; 52 Pa. 315; 10 Conn. 77; 29 N. J. 311, 333.

Third—"The general rules of interpretation are the same, whether applied to Statutes or Constitutions." Sedgwick, 19; Cooley's Con. Lim. 63; 3 Ind. 258; 21 N. Y. 12; 10 O. N. S. 588; Wade on Retrospective Laws, 8, 37; Bishop on Statutory Crimes, § 92; 7 Md. 135; 5 Ind. 557; 5 Md. 337.

Fourth—The special acts defendant claims have never been repealed.

An Act for the relief of the Orphan Boys' Asylum of New Orleans, approved March 12th, 1836, " that from and after the passage of this act all the property, real and personal, belonging to the Orphan Boys' Asylum of New Orleans, be and the same is hereby exempted from all taxation, either by the State, parish, or city, in which it is situated, any law to the contrary notwithstanding.''

No. 96—An Act for the relief of the Female Orphan Society and for other purposes. Be it enacted by the Senate and House of Representatives of the State of Louisiana in General Assembly convened, That the exemption from taxation passed in favor of the Orphan Boys' Asylum of New Orleans, by act approved 12th March, 1836, be extended to the Female Orphan Society, and to all other Orphan Asylums in the State, and to the House of Refuge for the Reformation of Juvenile Delinquents, and that they be exempted from parish and municipal as well as State taxation, any law to the contrary notwithstanding." Approved March 25th, 1844.

Fifth—Alleged repealing claims of the Constitution of 1868.

Article 118: " Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value, to be ascertained as directed by law. The General Assembly shall have power to exempt from taxation property actually used for church, school or charitable purposes.''

Article 149 : "All rights, actions, prosecutions, claims, contracts and all laws in force at the time of the adoption of this Constitution and not inconsistent therewith, shall continue as if it had not been adopted."

Sixth—The special acts of 1836 and 1844 were in force at the time of the adoption of the Constitution of 1868, and secured immunity from all taxation. "It is undeniable that the revenues derived from the property for which the exemption is claimed are devoted to the charitable purposes for which the Poydras Asylum was established; without such revenues or donations made to it, it is obvious that this institution would fail to accom: plish the praiseworthy public object for which it was established. Its successful opera- tion may be considered as an auxiliary in the administration of the municipal government which is under obligation to provide for its paupers." " By the Act of 1847, the sites of these institutions were exempted from taxation ; it is, therefore, clear that the Legisla- ture, by the act of 1850, intended to exempt them a more extensive exemption. But if the least doubt existed in our minds as to the true construction of this Statute, it is clear that the defendant would be entitled to the exemption claimed under the acts of the 12th March, 1836, and 25th March, 1844." " The corporation of New Orleans derives the power of taxation from the Legislature ; and as the Legislature has expressly withheld from it the power to tax defendant's property, the attempt to tax such property must necessarily be abortive." City of New Orleans vs. Poydras Asylum, 9 An. 589.

Seventh—Cooley on Taxation, p. 145 : " The exemptions commonly made by express Statute are based upon reasons so forcible that they have seldom been contested. We refer now to the exemptions of tools of trade; of the limited personal property of very poor persons; the property of corporations or associations devoted exclusively to the work of public charity, or in other directions where what they accomplish operates in the relief of public burdens and the like. Exemptions of the property of religious societies and of persons or corporations engaged in instruction have not passed, are challenged on the score of right and policy ; but the power to make them is unquestioned.''

Eighth—Considered by the late Supreme Court. Unreported case, City of New Orleans vs. George W. Campbell. On rehearing, Mr. Justice Egan, referring to property of this defendant, says : "Besides the exemption of the property itself with all enhancement of value from improvement results in this instance from the grace of the State toward an object of beneficence, a public charity which it is neither the will nor the policy of the law to tax."

Ninth—Property of defendant when acquired : Cotton press property was acquired in 1838 ; property in square 62 was donated by Mr. Poydras in 1824; property in square 129 was given by Mr. Poydras in 1817 and was the original site of the Asylum. Record pp. 28, 29.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is a suit for city taxes of 1879, assessed on real property, in this city, owned by the defendant, and *yielding revenue.*

The defense is, that the property is exempt from taxation.

The reply is, that whatever the law was which may have. been considered as exempting *all* of defendant's property, however used, from all taxation prior to 1868, that law, being inconsistent with the Constitution adopted in that year, was thereby abrogated, and that, if it survived that Constitution, it was repealed by Act 7 of 1870, the city charter.

There is no dispute touching the power of the State to have granted the exemption claimed at the time it is claimed that it did, (1844). Neither is there any contest as to the character and identity of the defendant institution, nor as to the nature or mode of use and enjoyment of the property from which the tax is claimed. The institution is a charitable one. The property in question yields a revenue which, added to what resources the asylum may possess, is *entirely inadequate* to meet its urgent wants and necessities. Neither the land nor the buildings upon it are otherwise used than as a source of revenue, which is applied solely to the legitimate purposes of the institution. The different special acts, under which the defendant claims exemption, were, under plea, offered and introduced in evidence.

The defendant corporation was created by a special act of February 22d, 1817. (Acts p. 193).

·*All* the property, real and personal, belonging to a similar institution, the Orphan Boys' Asylum of New Orleans, was, by act of March 12th, 1836, (Acts, p. 135) exempted from *all* taxation, State, parish or city, in which situated.

This exemption was, by act of March 25th, 1844, (Acts, p. 64, No. 96) specially extended to the Female Orphan Asylum, and to all other orphan asylums in the State, and to the House of Refuge for the Reformation of Juvenile Delinquents, which thereby were exempted from *all* parish, *municipal* and State taxation, "*any law to the contrary notwithstanding.*"

By act of March 21st, 1850, the property of this asylum, as well as that of all other charitable institutions, was exempted from any taxation by the City of New Orleans, or the several municipalities thereof.

The judicial annals of this Court show what construction was placed by our predecessors upon these different exemption laws. In a suit brought by the city against the present defendant, determined in 1854, in which taxes were claimed on property *yielding revenue* and not *actually used* for the purpose of the institution, the Court there said :

"It is undeniable that the revenues derived from the property for which the exemption is claimed, are devoted to the charitable purposes for which the Poydras Asylum was established. Without such revenues,

·or donations made to it, it is obvious that this institution would fail to accomplish the praiseworthy public object for which it was established. Its successful operation may be considered as an auxiliary in the administration of the municipal government, which is under obligation to provide for its paupers.

" The language used by the Legislature in the act of 1850, is plain and unequivocal, and in our opinion clearly extends, *without any discrimination*, the exemption from taxation to *all* property held by charitable institutions.

" But if the least doubt existed in our minds as to the true construction of this statute, it is clear that the defendant would be entitled to the exemption under the acts of the 12th of March, 1836, and 25th of March, 1844.

" The corporation of New Orleans derives the power of taxation from the Legislature, and as the Legislature has expressly withheld from it the power to tax defendant's property, the attempt to tax such property must necessarily be abortive." 9 An. 584.

Acting on the faith of the immunities thus extended and thereby accepting the same, the defendant corporation assumed to build, in 1858, ·a large and costly asylum in the Sixth District of this city, to which it moved its orphans in that year, and which it has since continued to ·occupy to the present day.

The evidence shows that the asylum is considerably in debt for a balance due on an amount borrowed for the purpose of constructing the building just mentioned; that its administration is gratuitous; that the revenue of the property owned by it is altogether applied to provide the ·orphans with food, clothing, fuel, medicine, attention in sickness and other indispensable necessities; that the corporation has no reserve fund, no accumulated capital; that, if the tax were to be paid, it would have to come out of the wants of the orphans, and, as a consequence, the good work of the institution would be paralyzed and its doors closed upon many suffering ones.

It cannot be, nor is it, disputed that, at the adoption of the Constitution of 1868, the defendant corporation was by law exempt from *all* taxation, but it is insisted on the one hand that this law was repealed, and on the other that it is in full force and vigor.

It is clear that it has not passed out of existence, *unless* it was annulled by the Constitution of 1868, or by a subsequently passed statute.

In order to ascertain whether the repeal has taken place, we must ·confront the laws and compare them to discover their discrepancies, inconsistencies or repugnancies. In so doing, we will be guided by the rules established by law and jurisprudence for the construction of statutes.

" The general rules of interpretation are the same whether applied to statutes or constitutions." Sedgwick Constr. 19.

" We are aware of no reasons, applicable to ordinary legislation, which do not apply equally well to constitutions." Cooley C. Lim. 63; 3 Ind. 258; 21 N. Y. 12; 10 O. N. S. 588; Wade on Retroactive Laws, 8–37.

" The general doctrine is, that constitutions are to be expounded in the same way and according to the same rules as statutes." Bishop on Statutory Crimes, ₹ 92; 7 Md. 135; 5 Ind. 557; 5 Md. 337.

It is elementary that laws are repealed expressly or impliedly. The repeal is express, where it is literally declared by a subsequent law; it is implied, when the new law contains provisions contrary to, or irreconcilable with, those of the former. Repeals by implication are not favored by law.

The old is abrogated by the new law only when the latter is couched in the *negative*, or so clearly repugnant as to imply a negative.

Different laws on the same subject, if not absolutely inconsistent, must be construed and taken as one.

A *particular law*, still less a *special statute*, which is one requiring plea and proof, is not considered as repealed by a general law, unless expressly so, or conflicting to such an extent that they cannot be reconciled and cannot stand, co-existing, under any circumstance.

R. C. C. 17, 23, 1746; 10 M. 172; 12 M. 697; 1 N. S. 161; 2 N. S. 33; 3 N. S. 190; 5 N. S. 527, 575; 6 L. 135; 7 L. 166; 4 R. 71; 1 An. 54; 2 An. 919; 3 An. 398; 5 An. 121, 395; 6 An. 605; 12 An. 498, 805; D. 1 L. 3 T. 1. 26, 28.

"A general statute, without negative words, will not repeal the particular provisions of the former, unless the two acts are irreconcilably inconsistent. The reason and philosophy of the rule is that, when the mind of the legislator has been turned to the details of a subject and he has acted upon it, a subsequent statute, in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction in order that its words shall have any meaning at all." *Generalia specialibus non derogant.*

Sedgwick Constr. 92, 2d ed.; Dwarris on Statutes; Cooley Const. Lim.

Among the cases mentioned by the first named author, is that of Blain vs. Baily, 25 Ind. 165, which is to the effect that: " a *special exemption* of particular property from municipal taxation is not affected by a *subsequent* general statute giving cities power to tax " *all property* " within their limits, there being no special repeal."

Further : Legislation, constitutional or statutory, is usually intended to operate *prospectively*, and should be applied accordingly, unless it clearly result from the terms used that it was designed to act retrospec-

tively, and that, under the Constitution it could legitimately do so. R. C. C. 8, 1946.

Sedgwick, 161, note; 58 Barbour, 161; Wade, 33, 34, 35, and authorities in note.

"One of the cardinal rules by which courts are governed in interpreting statutes is, that they must be construed as *prospective* in every instance, except where the legislative intent, that they shall act retrospectively, is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively. This rule rests upon no constitutional limitation of the legislative power, but is a doctrine of the common law, founded upon the recognized injustice of a method of making laws by which the Legislature looks backward to discover past errors to be corrected and past grievances to be remedied. In all retroactive laws there must be an element of surprise, by which the persons whose rights are affected are taken unawares. They are called upon to act in a manner different from what they had been led by the previous state of the law to anticipate. So repugnant is such a system of legislation to our moral sense of justice that it has been stigmatized as more unreasonable than that adopted by Caligula, who was said to have written his laws in a very small character and hung them upon high pillars, the more effectually to ensnare the people." Wade 34, 35, 36; 1 Blackstone Com. 46, and numerous authorities in note of Wade 34.

"This principle is not only applicable to legislative acts, but to State Constitutions, and, in fine, to all written law. Where constitutions contain provisions prohibiting the Legislature from authorizing counties, or subordinate branches of the State government, to assume liabilities, such provisions cannot affect the validity of special statutes already in existence, authorizing the assumption of such liabilities, but will be construed as prospective." 4 Peters, 401; Wade, 37; 85 Pa. 357; 81 Pa. 482; 9 W. Va. 162; 23 Md. 203; 41 Mo. 453.

"Every reasonable doubt as to the intention of the law-maker, is resolved *against*, rather than *in favor of*, the retroactive operation of the statute. Its retrospective features must be the necessary result of a strict construction of its express terms." Wade, 35; 21 Wis. 268; 15 Wis. 548; 58 Barb. 161; 21 Conn. 351; 52 Pa. 315: 10 Conn. 77; 7 Conn. 558; 29 N. J. 311, 333.

Applying those rules to the case before us, we find that article 118 of the Constitution is not couched in negative terms; that it is not retrospective in its tenor or apparent intent; that it contains provisions for the future only; that it is not inconsistent with, or obnoxious to, the exemption special statute, previously passed, invoked by the defendant in this suit.

It is worthy of note, that the Constitution, termed of 1864, which was superseded by that of 1868, contained, as did the latter, a special prohibition against *retroactive* legislation. This is not said to mean that it could be a restraint upon the Convention, but only to indicate how improbable it is that, after placing such prohibition on the powers of the Legislature, the Convention would itself have disregarded the rule, and that, too, in relation to church, school and charitable institutions, previously, unquestionably exempt.

The fallacy of the proposition advanced to the effect that all exemption laws previously in force were abrogated by the Constitution of 1868, arises from a confusion of ideas and from an erroneous assumption of facts. The confusion of ideas consists in thinking that the language used in the affirmative by the Constitution and by the Statutes, is as peremptory in its repealing effects as if couched in the negative, and in leaving out of view article 149, which continues in force consistent laws. The erroneous assumption of fact consists in dealing with the property of the defendant corporation as though the corporation had been created since 1868.

We see no incompatibility between the exemption law invoked and the Constitution of 1868, or the revenue laws, State and municipal, on the subject, and think that, far from being antagonistic and self-destructive, they can well be construed so as to co-exist and to accomplish the purposes for which they were respectively designed, particularly if we consider that, were it not so, the constitutional article and the statutes, which are claimed as obnoxious to the exemption invoked, might be assailed, as, in fact they are hypothetically, as impairing the obligations of a contract binding upon the State, its functionaries and the corporation. It *appears* to have been settled—but on this subject we express at present no opinion, as such is not necessary—that laws of this kind have been sustained as valid and binding when invoked by literary and charitable societies, when, at the time of the granting of the exemption, there existed no constitutional restraint on the power of the Legislature. Wade, 95; 6 Conn. 223; 8 Wall. 430; 7 Pick, 108; 8 Wall. 439. The case of University vs. People, decided in 1878, in 99 U. S. 321, bears peculiar analogy to that now under consideration.

We have examined the different authorities relied upon to defeat the defense of exemption, but do not feel authorized to give them the weight which is claimed for them.

We propose to review those authorities *seriatim* and to show their inapplicability to the case before us.

The case of the City of New Orleans vs. the Congregation Dispersed Judah, 15 An. 379, was decided in 1860, the defendant claiming an exemption under the act of 1856, which extended the immunity *only to prop-*

City of New Orleans vs. Poydras Orphan Asylum.

*erty in actual use,* (Act 1856, p. 147, ¾40, No. 4). The Court declared that the property belonging to the association, yielding revenue to its coffers, had not the privilege or benefit of this exemption.

In the case of the City vs. Bank of Lafayette, 27 An. 376, the bank claiming exemption was created since the adoption of the Constitution of 1868. The language used in the very brief opinion delivered must be considered as *obiter*, being totally uncalled for and is supported neither by reasoning nor justice. It cannot bind this Court.

In the case of the City of New Orleans vs. the New Orleans Mechanics' Society, 27 An. 436, the exemption pleaded was declined, not only because the charter did not provide for it, but also, because the property was not used as required by law for charitable purposes, and because the corporation was not a charitable institution. There is no reference in it to the Constitution of 1868.

In the case of New Orleans vs. People's Bank, 27 An. 519, the suit was for a tax on the capital of the bank. The Court held that, because the defendant is required to pay a license, it is no reason why property owned by it should not be taxed like other property in the City of New Orleans.

The bank had been created in 1869, (27 An. 646).

In New Orleans vs. People's Bank, 27 An. 646, the bank having been incorporated in *1869*, was declared not entitled to the exemption claimed, owing to the prohibitory provision of the Constitution of 1868, found in article 118.

In New Orleans vs. Metropolitan Loan, Savings and Pledge Bank, 27 An. 498, the bank having been created since the adoption of the Constitution of 1868, was denied the exemption claimed for the same reason.

In New Orleans vs. St. Charles Street R. R. Co., 28 An. 497, decided in 1876, the defendant claimed exemption under a contract entered into with the city, and the Court held that the city had no right to defeat the commands of its creator; in other words, to exempt the property as claimed.

In New Orleans vs. St. Patrick's Hall, 28 An. 512, the exemption was claimed under an act of 1874, No. 29, but the evidence showed that the property was not used for church, school or charitable purposes, and the act was declared violative of the constitutional prohibition and, therefore, null and void.

In New Orleans vs. Lafayette Insurance Co., 28 An. 756, the exemption was claimed under an Act of 1871, which being violative of the Constitution of 1868, Art. 118, was declared inoperative.

In New Orleans vs. Davidson, 30 An. 554, the question was one of compensation, and really has no practical bearing on the case now before us.

In New Orleans vs. St. Anna's Asylum, 31 An. 295, the question was,. whether property acquired in 1874, and yielding revenue, could be considered as exempt from taxation under the charter of the corporation granted in 1853, which placed it on equal footing with other charitable institutions.   It is true the Court denied the exemption, but it said: "When a case of prior acquired property presents itself it will be time enough to express our opinion thereon."   So that the Court drew a line of demarcation between the two sorts of property, that acquired before and that acquired after 1868.   This case is on writ of error before the United States Supreme Court and undecided.   We cannot recognize that it has a bearing on the matter now before us and which exhibits a case of *prior acquired* property.

The constitutional requirement of equality and uniformity, only extends to such objects as the Legislature shall determine to be property subject to the burden.   Cooley on Taxation, 126.

The rule of uniformity "must extend to all property subject to taxation, so that all property may be taxed alike, equally, which is taxing by a uniform rule."   Burroughs on Tax., p. 65.

The provision of uniformity does not prevent the State from exempting objects of charity.

Commenting upon article 118 of the Constitution of 1868, providing that "all property shall be taxed in proportion to its value, to be ascertained by law," in the case of New Orleans vs. Fourchy, 30 An. 913,. Mr. Justice Spencer, as the organ of the Court, says, alluding to the defendant :

"He maintains that, by the Constitution of 1868, all property or none must be taxed, and he cites article 118.   We do not construe that clause as does the defendant.   It simply means that the taxation of *all* property subject to tax shall be *ad valorem.*"

Further, he says :

"The question as to what property falls or shall be embraced within the classes designated as for ' church, school, or charitable purposes,' is, of necessity, largely one of legislative discretion, and this Court would with reluctance interpose its opinions to thwart this legislative discretion, unless there was a manifest and flagrant abuse of it.   We are not prepared to say that in any of the exemptions complained of the Legislature has transcended its authority; on the contrary, we think it a. wise and beneficent exercise of it to exempt enough of the indispensables of life to save the poor from pauperism, and thus protect property and society from increased burdens."

It may well be that the charter of the defendant may be a subject of repeal under the powers reserved by a general law; but we consider that it was *not* repealed.   The most that could be claimed would be

NEW ORLEANS, MAY, 1881. 859

City of New Orleans vs. Poydras Orphan Asylum.

a partial repeal, or an amendment destructive of an immunity previously granted; but, from the fact of a reserved power to repeal entirely, it cannot be inferred that the power to repeal partially, or amend, can be exercised. The power to destroy at once may exist, but the power to destroy gradually, or in part, has no being. It may well be that, before exercising the high prerogative of total destruction of an institution of charity of this description, which has exhibited a character which strongly recommended it to the protection of government, the Legislature would pause and rather support than suppress it.

Construing the law invoked with the Constitution and subsequent revenue State and municipal statutes, we think they mean and say:

"Taxation shall (hereafter) be equal and uniform throughout the State. All property (not heretofore or hereafter exempt) shall be taxed in proportion to its value, to be ascertained as directed by law. The General Assembly shall have power to exempt (hereafter) from taxation property actually used for church, school or charitable purposes."

Coming down to the character of the particular property on which the tax claimed was levied, we attach no importance to the fact that it is not in the physical, actual, use of the asylum, and that it is a source of revenue. It is enough that it was entitled to be and was exempt from taxation at the adoption of the Constitution of 1868, under the law of 1844, although not in such actual use, and that the exemption is still in force, to enable us to concede to it the immunity claimed for it.

Construing, as we do, the law of exemption relied upon and the Constitution of 1868, and the revenue statutes subsequently passed, we retain unhurt, uncrippled, an institution, which, owing to its usefulness, like others of the same character, to the public, to suffering and forsaken humanity, it is neither the will nor the policy of the law to tax.

We do not mean that whatever property may be owned by a charitable institution, incorporated prior to 1868, is exempt from all taxation; on the contrary, we expressly hold that it is only such property as is actually used, or the revenue of which is *indispensably* necessary for the legitimate purposes of the institution, that enjoys the immunity. Exemptions subsequently granted are restricted to the property *actually used*, and do not cover property yielding revenue. Burroughs on Tax., pp. 134, 135.

The judgment of the lower court subjected the property to the payment of the tax claimed on the authority in the 31st An., which does not authorize such conclusion.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be reversed, and proceeding to render such judgment as should have been rendered,

It is ordered, adjudged and decreed that the demand of plaintiff be

rejected, with judgment in favor of, the defendant, with costs in both courts.

Mr. Justice FENNER dissents, reserving the right to express his written views.·

### DISSENTING OPINION.

FENNER, J. I find it impossible to concur in the decree rendered herein.

In the view which I take of this case, the learned opinion delivered on behalf the majority of the Court overturns the settled jurisprudence of the State on all the questions which it determines, and omits to determine at all the only question left open to controversy under that jurisprudence.

To establish this, it is only necessary to refer to the latest decision on the subject, in the City of New Orleans vs. St. Anna's Asylum, 31 An. 292, which reviews all prior decisions and states the substance of the "settled jurisprudence," including the proposition, "that all grants of exemption made after the adoption of the Constitution, of property not in terms covered by it, were void, and that all *prior* grants of exemption inconsistent therewith were *repealed* thereby unless *protected by contracts.*"

It is to be borne in mind that the Court, in the above case, was discussing a statute, incorporating the Orphan Boys' Asylum, passed in 1836, the very year in which the statute incorporating the defendant corporation was passed, and absolutely identical in the terms of exemption. The Court says : " Under this settled jurisprudence, there can be no doubt of the liability of the property in controversy, unless removed from the general rule by some exception. Such exception is claimed as resulting from the charter of the defendant corporation, by which it is contended that a *contract* was created divesting the State of all power to repeal the exemption claimed." .

Proceeding, the Court quotes the exemption clause of the charter, identical with that now under consideratian, and says : " The mere existence of this statute would not alone entitle the property to exemption, for, as we have already seen, *all statutory exemptions incompatible with the existing constitutional provision have, by it, been repealed.* The solitary question, therefore, is, was this exemption a contract of such a nature as to invest the corporation with such a right as to remove it from all subsequent legislative control ? "

It cannot possibly be disputed that this decision does positively settle the point that the Constitution of 1868 did repeal all prior inconsistent exemption laws, unless protected by the element of contract; and does settle that an exemption law, precisely similar to the one at bar, is inconsistent with it.

City of New Orleans vs. Poydras Orphan Asylum.

The opinion of my brethren in this case overrules the St. Anna's case on both the above points. The St. Anna's opinion is in harmony with all prior opinions of the courts organized under the Constitution of 1868.

I think that this Court, created under the Constitution of 1879, should, in all possible cases, abstain from overruling the construction placed upon the Constitution of 1868 by the courts organized under that constitution. I think the construction adopted by those courts on the present subject was clearly correct; but, if I doubted, I should follow their authority.

In this case, as in the St. Anna's case, the only question left open to controversy is whether the exemption claimed was protected as a contract. There, the property, for which the exemption was claimed, was acquired *after* the Constitution of 1868 was in force, and it was held that such property was not so protected, and it distinctly left open the question as to *prior acquired* property to be determined when presented. In this case, it is presented, and should be determined. The opinion of my brothers fails, and, indeed, expressly declines, to determine it.

In my opinion, the exemption granted under the statute invoked in this case, is not protected as a contract. It was a mere privilege, without consideration, simply suspensive of the sovereign right of taxation, and susceptible of being recalled by the sovereign will. I do not think that one General Assembly has the power, without consideration, to divest even subsequent assemblies, and, still less, the people in convention, of the sovereign right of taxation.

I, therefore, dissent from the opinion and decree herein rendered.

## On Rehearing.

The opinion of the Court was delivered by

POCHÉ, J. In view of the important questions of law involved in this case, and considering the great earnestness with which the application for rehearing was pressed upon us by counsel for the city, we deemed it our duty to grant a rehearing in the case.

We have had the benefit of able and learned oral argument; we have carefully re-examined the case, have thoroughly analyzed the numerous authorities submitted for our consideration; and our conclusion is that our previous decree was correct.

It is, therefore, ordered, adjudged and decreed that our former decree remain undisturbed.

TODD. J. I concur in the decree refusing to set aside our former decree in this case. In expressing this concurrence, I desire to state briefly my reasons therefor. This society was established in 1817.

In 1836, by an act of the Legislature, it was declared: "That from and after the passage of this act *all property, real and personal,* belonging to the Orphan Boys' Asylum of New Orleans be, and the same is hereby, exempted from all taxation, either by the State, parish or city in which it is situated, any law to the contrary notwithstanding."

By Act 96, of 1844, the same "exemption from taxation" was extended to the Female Orphan Asylum, being the corporate name of the defendant in this suit. And another act was passed in 1850 again declaring a special exemption in favor of this society from municipal taxation.

After the passages of these several acts, and we must presume on the faith of these exemptions, large improvements and additions were made to the asylum buildings and money borrowed to make the same, part of which is still owing by the society, and which was, doubtless, loaned on the faith of these several acts.

I think, under these facts, a contract was created between the State and this society, protected by the Federal Constitution, and bringing it clearly within the cases of the University vs. People, 9 Otto, 309, and the City vs. Southern Bank, 23 An. 271.

While not prepared to dissent from the reasoning of the Court in its former opinion, I prefer to place my concurrence in that decree upon the ground now assigned.

---

## DISSENTING OPINION.

FENNER, J. In order to avoid confusion, it is necessary to consider, separately and independently, the several questions presented by this case.

The defendant claims its exemption under and by virtue of act of February 22d, 1817, and act of March 24th, 1844, taken in connexion with act of March 12th, 1836, which provide substantially that *all* the property, real and personal, belonging to the institution, is exempted from *all* taxation, State, parish or municipal.

This exemption is unrestricted by any qualification whatever as to the use either of the property or of its revenues.

It is a striking fact, that the Constitution of 1812, in force when these statutes were passed, contained no provision whatever on the subject of taxation, but left the legislative power over the rate, mode, purposes and objects of taxation, entirely unrestricted. Therefore, the power of the Legislature, under that Constitution, to make the broad and unqualified exemption of defendant's property was, at the time, unquestionable.

A large portion of the original majority opinion in this case was devoted to the establishment of the proposition that the Constitution

NEW ORLEANS, MAY, 1881. 863

City of New Orleans vs. Poydras Orphan Asylum.

·of 1868 and the revenue laws passed in pursuance thereof did not operate retroactively or to repeal the exemption granted by the statutes ·above referred to.

If this proposition were correct, this case would be one of easy solution. It would only have been necessary for defendant to establish its ·title to the property in order to sustain the exemption claimed, without reference to the use either of the property or its revenues.

I can, therefore, perceive no necessity or relevancy in the further elaborate discussion by the Court of the meaning of Art. 118 and of the terms "actually used for church, school and charitable purposes," nor in the conclusion that the defendant's property is exempt *because* its revenues are used for legitimate charitable purposes.

I think that, under the terms of the Constitution, and under the jurisprudence of the courts established thereunder, the exempting statute was unquestionably repealed so far as inconsistent with the rule of taxation provided by article 118.

The position that in giving the Constitution this effect, we attribute to it a retroactive operation, is, to my mind, entirely unsound.

Article 118 of the Constitution of 1868 simply prescribed the rule of ·taxation to be *thereafter* followed by the legislative power. The rule operated for the *future* only, and the Legislature, in framing future tax-laws, was bound to follow that rule, and to disregard all prior statutes inconsistent therewith. If it might disregard the constitutional rule, and ·follow former statutes differing therefrom, the constitutional requirement would be vain and unavailing.

The sweeping provision of Art. 149 of the Constitution of 1868 that ·" *all* laws in force at the time of the adoption of this Constitution and not inconsistent therewith, shall continue as if it had not been adopted," is pregnant with an equally sweeping deduction that all laws, inconsistent ·with the Constitution, must cease to have effect.

This statute must stand on the same footing with all other existing statutes. So far as consistent with the Constitution, it remained in force; so far as inconsistent therewith, it was repealed and destroyed, unless protected by the element of contract, which we are not now discussing.

Such was the distinct and unequivocal conclusion reached by this Court in the St. Anna's Asylum case, where it was said, in discussing the *very same statute* here in question: " The mere existence of this statute would not alone entitle the property to exemption, for, as we have already seen, all statutory exemptions, incompatible with the existing constitutional provision, have, by it, been repealed." 31 An. 292.

It is irrelevant to say that this decision is on appeal to the U. S. ·Supreme Court and is, therefore, not final as authority. On *this point* it *is* final, the only question carried to the Supreme Court being the ques-

864      SUPREME COURT OF LOUISIANA,

City of New Orleans vs. Poydras Orphan Asylum.

tion of *contract*, which we are not now considering. The decision affirms the case of City vs. Bank of Lafayette, 27 An. 376, which had declared that "any law which is in conflict with that article (118), whether passed before, or after, its adoption, is stricken with nullity, unless the law created a contract."

For this Court to overrule these decisions of the courts organized under the Constitution of 1868, is, to my mind, a violation of the cardinal rule that constitutions should receive an unvarying interpretation. "The meaning of a constitution," says Judge Cooley, "is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it." It is not to be made to mean one thing to-day, and another thing to-morrow. By our decision of to-day, the Constitution of 1868 is made to have a different meaning from that which it had when adopted, and continued to have during the whole term of its existence, according to the authoritative determination of the highest judicial tribunal created by it, and having authority to interpret its effect in the last resort.

The construction thus placed upon it by its own courts, was made the basis of legislative action in framing the revenue laws of the State and city, and our decision must operate seriously to derange the estimates of receipts and expenses, upon the certainty and correctness of which depends the financial system of both.

The same construction may well have influenced the minds of the framers of our present constitution in using, in its article 258, the same language with reference to prior existing laws, which had been used in article 149 of the Constitution of 1868, under the supposition that the effect would be to repeal exemption, as well as other statutes inconsistent with the constitutional rule of taxation, as had been decided to be the effect of the same words in the former Constitution. Aside from my conviction that the former decisions are correct, these and other like considerations would prevent me from consenting to overrule them.

The next point for consideration, is to determine the meaning of article 118, in order to decide whether the exemption here claimed is inconsistent with it.

The interpretation placed upon this article in the majority opinion is entirely contrary to that established by the existing jurisprudence.

In a case later even than that of the St. Anna's Asylum, the Court said: "The grant of power to the General Assembly (in article 118) to exempt property actually used for church, school or charitable purposes, is an enumeration, and, hence, an exclusion of the power to exempt all property not included in its terms." La. Cotton Mfg. Co. vs. City, 31 An. 443.

Precisely the same doctrine was first announced in Morrison vs.

Larkin, 26 An. 702, where the Court said : " The special grant of authority in article 118 to the General Assembly ' to exempt from taxation property actually used for church, school or charitable purposes,' carries with it an implied inhibition against the exemption of property *not* actually used for church, school or charitable purposes."

The same doctrine was followed in 27 An. 646, *id.* 276, *id.* 648 ; 28 An. 498, 512, 756; Cooley's Const. Lim. pp. 64, 87.

Then, unless the property here claiming exemption is " *actually used* for church, school or charitable purposes," the exemption (in absence of contract) cannot be sustained.

This brings us to the question as to what is meant by " actually used " for such purposes.

Here, too, the authorities are unanimous that the phrase means the *actual use* of the *property* and not of the *income* derived therefrom. Property is one thing—*income* is another.

Four decisions of this Court sustain the doctrine that where the *property itself* is not used for the designated purposes, but is rented to others, who use the property for their personal purposes, it does not fall within the meaning of the phrase " actually used," although the revenues derived by the owner may be applied to charitable purposes. Dispersed of Judah case, 15 An. 390; St. Patrick's Hall case, 28 An. 512; St. Anna's Asylum case, 31 An. —; Mechanics' Society case, 27 An. 436; see Burroughs on Tax., pp. 134, 136; Blackwell Tax Titles, 409, 410.

The learned counsel for defendant have utterly failed to point out any contrary authority either in this State or elsewhere, judicial or textual.

The case of University vs. People, 9th Otto, 324, the only one referred to on this point, turns out to be directly against him.

From a close examination of this case, the following facts, strikingly similar to the one at bar, appear: The Constitution of 1848 of Illinois authorized the exemption of "such property as the Legislature *may deem necessary* for school, religious and charitable *purposes.*"

Under this constitution, the Legislature passed an act declaring that " *all* property, belonging to or owned by said corporation, shall be forever free from taxation."

Subsequently, in 1870, the State adopted a new constitution providing that "such property as may be used exclusively for school, religious and charitable purposes, may be exempted from taxation."

The Legislature, then, in 1872, passed a law exempting only " the real estate on which the institutions of learning are located, not leased by such institutions or otherwise used with a view to profit."

Under this act, the State demanded taxes on property of the University leased by it, but of which the revenues were used exclusively

55

866        SUPREME COURT OF LOUISIANA,

City of New Orleans vs. Poydras Orphan Asylum.

for its educational purposes. The Supreme Court of Illinois, under the peculiar facts of the case, conceded that if the original exemption law was valid under the constitution of 1848, it constituted a contract not repealable by the subsequent constitution and law. But the Court held that, even under the constitution of 1848, the legislative power of exemption extended only to property used directly for school purposes, saying, "property for such purposes, in the primary and ordinary acceptation of the term, is property which, *in itself*, is adapted to and intended to be used as an instrumentality in aid of such purposes. It is the direct and immediate use, and not the remote or consequential benefit to be derived through the means of the property, that is contemplated." The Court, therefore, maintained the tax.

The U. S. Supreme Court, in reviewing this decision, said: " The first observation we have to make is, that the constitution (of 1848) does not say '*property used for schools,*' as the opinion of the Court implies. Neither the important word, *use* or *schools*, is found in the section of the instrument on that subject. If the language used were that the Legislature might ' exempt property for the use of schools,' we should readily agree with that court. Indeed, that would be the appropriate language to convey the idea on which the Court rests its decision."

The Court proceeds then to show that the constitution of 1848 gave the Legislature discretionary power to exempt property " for school purposes," without any reference to its *use*, and held that property leased, of which the revenues were applied to school purposes, was property *held* for school purposes, although not *used* for school purposes.

And the Court further places side by side the provisions in the constitution of 1848 and 1870, to show that the language used in the latter, and not in the former, was the proper language to be used, if the intention was to confine the exemption to property actually and primarily used directly for the school purposes, and to exclude property leased for other purposes, though the revenue was applied to the school.

Not the slightest question was made in either Court, that the later constitution repealed the prior statutory exemption, unless the latter was a contract, and both Courts agreed that the language employed in the later constitution, viz: " Property exclusively used for church, school or charitable purposes," only embraced property so directly and primarily used, and excluded property leased for revenue, although the revenue was employed for the designated purposes. It is impossible to draw a distinction between " property exclusively used," and "property actually used," for such purposes.

So far as my own researches have extended, and so far as I have been aided by the researches either of defendant's counsel or of the

majority of my brethren, I have been able to discover no single authority militating, in the slightest degree, against any of the positions herein assumed.

I am, therefore, constrained to conclude, that, unless protected as a contract, the exemption claimed by defendant has no ground to rest on.

Upon this question of contract *vel non*, I have been seriously impressed with views of that subject expressed by the U. S. Supreme Court in the case of University vs. People, just discussed, and, under the facts of this particular case, might possibly change the opinion expressed in my former dissenting opinion. I shall, therefore, content myself with dissenting from the opinion of the Court herein, without taking any position as to the decree.

The importance of the questions involved, as well as my sympathy with a noble charity, impel me thus to place of record the strong reasons which require me to oppose rulings favorable to interests.